UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) <br> ) <br> ) |
| Plaintiff | ) <br> ) |
| v. | )    CAUSE NO. 3:00-CV-446 RM <br> ) |
| FIRST CHOICE MANAGEMENT SERVICES, INC., and GARY VANWAEYENBERGHE, | ) <br> ) <br> ) <br> ) |
| Defendants | ) |

OPINION AND ORDER

The receiver for First Choice Management Services, Inc. filed his "Emergency Motion for Constructive Trust on Branson Energy Texas, Inc. Assets and Injunction against Michael Wilson and Related Persons and Entities Including Alco Oil & Gas, LLC," seeking, among other things, a constructive trust on Branson Energy Texas assets, a title decree, and an injunction against Alco Oil & Gas, LLC, Mr. and Mrs. Wilson, and any other party that would interfere with Branson Energy's assets. The receiver contends that Branson Energy is the legal owner of the assets in question – oil and gas leases – and pursuant to a September 17, 2003 Freeze and Turnover Order, he is authorized to seek equitable relief to enforce the order to the extent that Branson Energy's assets are subject to dissipation, concealment, or disposition. Alco contends that it owns the oil and gas leases and imposition of a constructive trust without a hearing would deprive Alco of property rights without due process. Alco moves the court to schedule an

evidentiary hearing, authorize expedited discovery, and grant leave to file a surreply. The court now addresses all of Alco's pending motions [Doc. Nos. 368, 371, 378].

*Background*

An SEC investigation revealed that First Choice Management Services, Inc. and its president and chief executive officer Gary Van Waeyenberghe, through others, were fraudulently soliciting investors to invest in unregistered securities in violation of the Securities Act of 1933. On September 14, 2000, the court appointed Joseph D. Bradley as receiver over defendants First Choice and Mr. Van Waeyenberghe. Mr. Bradley was authorized, among other things, to take control of First Choice's funds and assets and to take such action as is necessary to preserve them.

Most recently, the receiver's investigation of the disposition of First Choice investors' funds has revealed that during the summer of 2002, the principals of First Choice, including Dennis Weaver, were dealing with Michael Wilson (then Alco's owner and operator) in anticipation of acquiring certain oil and gas interests from Alco.[1]

In July 2002, Mr. Weaver requested that his attorney, Todd Walker,

---

[1] Alco is no longer owned by Mr. Wilson, who was recently released from the United States Bureau of Prisons. Mr. Wilson pleaded guilty to, among other things, securities fraud violations for defrauding investors of Original Media, Inc. through false representations concerning Alco's assets.

2

incorporate Branson Energy. The receiver contends that Branson Energy was a sham corporation created solely to acquire the subject oil and gas interests. On July 25, 2002, — two weeks after Branson Energy's incorporation — Alco entered into an agreement with Branson Energy to sell these oil and gas leases. The terms of the agreement were expressed in an assignment and bill of sale, a purchase agreement, and a operating agreement. Under the purchase agreement's terms, Branson Energy was required to tender about $10 million in consideration for Alco's interest in the leases. Alco contends that Branson Energy eventually tendered only $1.2 million and because of that failure to comply with the contract, Alco notified Branson Energy of the default via a letter from Mr. Wilson dated June 20, 2003. The record before the court shows that Resort Hotels, Inc., on Branson Energy's behalf, tendered the consideration to Alco. Under the operating agreement's terms, Mr. Wilson was left in charge of Alco to operate the leases. The receiver contends that Mr. Wilson's receipt of more than $1 million from Mr. Weaver and related companies, neither Mr. Wilson nor Alco produced any oil.

In December 2002, the receiver filed its jurisdictional paperwork in all four of Texas's federa; district courts to lay claim to the assets procured with defrauded investor funds. On September 18, 2003, this court ordered the freeze or turnover of First Choice assets, finding good cause to presume that Mr. Weaver, Mr. Wilson, Alco, and Branson Energy, among others, had possession, custody, or control of First Choice assets.  On March 8, 2005, this court entered final judgment as to Mr. Weaver and several entity defendants including Branson City Limits Inc.,

3

Branson Holdings, Inc., BCL Financial Group, and Resort Hotels, Inc.

The subject oil fields continue to lay dormant. Alco contributes this to the receiver's "non-responsive approach" to settlement negotiations, and seeks relief from an injunction issued by the Southern District of Indiana[2] so that it may place the fields into production. The receiver maintains that it is Alco's legal maneuvering that has prevented its own operators from beginning production under the leases and that Mr. Wilson's recent release from prison gives rise to additional concerns including acts of theft by Mr. Wilson, unfounded claims of ownership of the leases made to the Texas Railroad Commission, and a threat of Mr. Wilson's interference which has thwarted potential operators from initiating operations. Accordingly, the receiver seeks, in addition to the injunction, a decree requiring the use of Alco's bond with the Texas Railroad Commission.

*Motion for an Evidentiary Hearing*

Under the court's earlier orders, the receiver is authorized to seek a constructive trust over Branson Energy's assets — whatever they are determined to be. Davis v. Combes, 294 F.3d 931, 937-938 (7th Cir. 2002). The September 2003 Freeze and Turnover Order authorizes the receiver to implement "procedures necessary to effect the provisions of this order," including equitable relief regarding the assets of Branson Energy who was found to have possession,

---

[2] *See* SEC v. Ballinger No. 1:03-cv-1659 (S.D. Ind. 2004) (First Supplemental Receiver Order, Docket No. 128).

custody or control of First Choice assets. (September 17, 2003 Freeze and Turnover Order; March 8, 2005 Final Judgment Against Dennis Weaver); SEC v. Cherif, 933 F.2d 403, 414 (7th Cir. 1991).

A constructive trust is imposed when the person or entity who holds title to the property is subject to the equitable duty to convey it to another on the ground that they would be unjustly enriched. Strong v. Jackson, 777 N.E.2d 1141, 1151 (Ind. Ct. App. 2002), *aff'd on rehearing,* 781 N.E.2d 770 (Ind. Ct. App. 2003, *trans. denied.* An equitable duty to convey property arises when a party seeking to impose a constructive trust demonstrates that the other party obtained title by fraud. Id; Rollins by Rollins v. Metropolitan Life Ins. Co., 912 F.2d 911, 914 (7th Cir. 1990) (applying Indiana law). As the party seeking to impose a constructive trust on Branson Energy's assets, the receiver has the burden of showing that Branson Energy owns the subject oil and gas leases and that title was obtained by fraud. Id. Because it is undisputed that both Branson Energy and Resort Hotel, Inc. assets were obtained with First Choice investor funds, the issue turns on ownership of the oil and gas leases, a question on which the receiver bears the ultimate burden of proof.

Alco contends that due process requires an evidentiary hearing on the ownership of the oil and gas leases before the court can divest it of its property interests. The due process clause doesn't require that a hearing precede every decision affecting property; because due process doesn't require a hearing when no disputed issue of material fact exists, Alco is entitled to a hearing only if there

5

is a dispute concerning the ownership of the oil and gas leases. Wozniak v. Conry, 236 F.3d 888, 889 (7th Cir. 2001).

The record before the court concerning the ownership of the leases includes an assignment instrument between Alco and Branson Energy, a purchase agreement between Alco and Branson Energy, a letter of intent executed by Gary Dolberry, the declaration of Mr. Wilson, the affidavit of Robert Russell, Jr., and Mr. Wilson's default letter to Branson Energy. The assignment instrument provides that Alco "does hereby grant, bargain, sell, transfer, assign and convey ... all of Assignor's working interest in and pursuant to the oil and gas leases as to all depths owned by Assignor... [however], all rights, title, benefits and interest will revert back to the Assignor, should any of the terms, conditions or obligations of the Assignee not be met." The receiver contends that an executed transfer of ownership occurred pursuant to the assignment instrument, and that any claims Alco might have under the purchase agreement are contractual in nature and don't impact Branson Energy's ownership of the oil and gas leases. Alco contends that Branson Energy's failure to tender the consideration due under the purchase agreement terminated any interest conveyed to Branson Energy under the agreement.

Under Texas law,[3] rights to oil and gas pursuant to a lease are considered

---

[3] Because a constructive trust is an equitable remedy created by state law, the court should look to the law of the state which the district court sets to determine the requirements for and limits of that concept FED. R. CIV. P. 64; SEC v. Cherif, 933 F.2d at 414. Under Indiana law, the jurisdiction in which

real property, ownership of which can be established the same as any other real property interest. SWEPI, L.P. v. Camden Resources, Inc., 139 S.W.3d 332, 335 (Tex. Ct. App. 2004).  By executing a lease, an owner of a oil and gas estate grants a fee simple determinable interest in the mineral estate to the lessee. McMillan v. Dooley, 144 S.W.3d 159, 183 (Tex. Ct. App. 2004). This assignment instrument conveyed to Branson Energy a fee simple determinable interest in the oil and gas leases. The court agrees with the receiver's contention that the execution of the assignment instrument transferred ownership in the leases. Because the assignment of the fee simple determinable interest was conditioned on Branson Energy meeting the terms of the purchase agreement, however, any interest that Branson Energy has in the leases is subject to its compliance with the purchase agreement. *See* Rogers v. Ricane Enterprises Inc., 763, S.W.2d 764 765-777 (Tex. 1994)[4].

---

immovable property is situated controls and governs its acquisition, disposition, and devolution. Gross Income Tax Division v. Bartlett, 93 N.E.2d 174, 178 (Ind. 1950) *citing* 15 C.J.S., Conflict-of-Laws, § 19(a), pp. 936, 937.

[4] The court cannot agree with Alco's contention that pursuant to an instrument conveying  a royalty interest to Domain Energy Finance Corporation, n/k/a Range Energy Finance Corporation, which purports to make any assignment by Alco "null and void," the assignment of the oil and gas leases to Branson Energy is void. A provision in the instrument limiting Alco's assignment of its mineral estate is a condition subsequent for the sole benefit of the grantee. Alco's failure to obtain consent from Range doesn't render the assignment to Branson Energy void; rather, it is voidable upon the proper legal recourse by Range. *See* Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc., 938 S.W.2d 102, 111-112 (Tex. App. 1996) (applying the same principal in the context of landlord and tenant. Tenants failure to obtain the required consent when the condition subsequent was for the benefit of the landlord did not

The consideration due from Branson Energy under the purchase agreement included $250,000 in instalments and 2 million shares in Capital Equities Group stock. The record before the court presents a factual dispute concerning Branson Energy's compliance with the purchase agreement's terms. For example, the June 20, 2003 default letter from Mike Wilson proclaims that Branson Energy "has defaulted on terms and conditions of the above reference agreements [and] is not compliant on even one point of any of the above referenced documents." Three weeks earlier, though, Mr. Wilson told a federal jury that Branson Energy has made investments in Alco pursuant to the purchase agreement. Alco admits that $1.2 million was tendered, though the issue of the CEG Stock remains.[5] The gist of Alco's argument is that Branson Energy's breach of the purchase agreement resulted from a failure to transfer to Alco shares of CEG stock. Under the purchase agreement, the transfer of CEG shares was conditioned on Alco providing Branson Energy with an acceptable title opinion and Alco maintaining a minimum oil production requirement. There is little in the record to indicate whether these conditions were met. It also appears that Mr. Wilson received more than $1 million from Mr. Weaver; any relationship between those funds and

---

render the assignment void).

[5] The Registered Report of Weaver-Related funds received by Alco submitted by the receiver indicates that Resort Hotels, Inc. — an entity owned and operated by Dennis Weaver — tendered $1,012,499 that was deposited into an account Alco maintained at Bank of America between the months of September 2002 and August 2003.

payment due to Mr. Wilson's Alco from Mr. Weaver's Branson Energy is unclear. Because the court cannot determine from the record what Branson Energy's interest may be in the gas and oil lease for purposes of a constructive trust, and because the matters related to the leases are complex, the court grants Alco's motion for an evidentiary hearing.

The court directs the parties to submit statements concerning the ownership of the gas and oil leases addressing the following issues: Branson Energy's compliance with the monetary requirements of the purchase agreement; Branson Energy's transfer of Capital Equities Group shares pursuant to the purchase agreement; Alco's production of a title opinion under the purchase agreement; and whether the oil wells located on the properties subject to the lease—producing oil in August of 2002—sustained the minium production requirement.

*Motion for Expedited Discovery*

Alco also seeks a period of discovery not to exceed 30 days so that the parties can prepare for the evidentiary hearing on the disputed ownership of the oil and gas leases. Alco says that formal discovery is needed because its numerous requests for documentation and information have been met by a "stone wall." The record does not reflect an unwillingness of the receiver to work with Alco. Indeed, the issue of ownership of the oil and gas lease pursuant to the assignment and purchase agreement between Branson Energy and Alco already has been fully

9

briefed. *See* <u>SEC v. Ballinger</u> No. 1:03-cv-1659 (S.D. Ind.) (supporting briefs for May 4, 2005 Order, Docket. Nos. 202, 216).  The court agrees with both parties that the passage of time inures to the benefit of no one, and because the risk that the value of the leases is being diminished outweighs the need for further discovery, the court denies Alco's request for discovery.

*Motion to File Surreply*

Alco also requests leave to file a "very short" surreply to introduce additional evidence about the ownership of the oil and gas leases. Having granted Alco's request for an evidentiary hearing, the court now denies the motion to file surreply as moot.

*Conclusion*

For all the reasons stated above, the court:

1. GRANTS Alco's motion for an evidentiary hearing on the issue of ownership of the subject oil and gas leases [Docket No. 368], in furtherance of which the court DIRECTS the parties to file, within 14 days of the date of this order, their statements concerning (a) the amount of time that will be required for the hearing, and (b) the ownership of the leases, specifically addressing: (i) Branson Energy's compliance with the monetary requirements of the purchase agreement; (ii) Branson Energy's transfer of Capital Equities Group shares pursuant to the purchase agreement; (iii)

10

Alco's production of a title opinion under the purchase agreement; and (iv) whether the oil wells located on the properties subject to the lease—producing oil in August of 2002—sustained the minium production requirement.

    2.    DENIES Alco's motion for discovery [Docket No. 371]; and

    3.    DENIES Alco's motion for leave to file a surreply [Docket No. 379].

The court reserves its ruling on Receiver's motion for constructive trust until an evidentiary hearing is held. The hearing will be scheduled following receipt of the parties' written statements.

SO ORDERED

Dated: October 13, 2005

                                        /s/ Robert L. Miller, Jr.
                                        Chief Judge
                                        United State District Court