VACATED PURSUANT TO 9/5/06 ORDER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff | ) ) ) |
| v. | ) CAUSE NO. 3:00-CV-446 RM ) |
| FIRST CHOICE MANAGEMENT SERVICES, INC., and GARY VANWAEYENBERGHE, | ) ) ) ) ) |
| Defendants | ) |

OPINION AND ORDER

The court-appointed receiver for First Choice Management Services, Inc. is trying to collect investor funds that Branson Energy Texas used in the purchase of certain oil and gas leases from Alco Oil & Gas, LLC. The receiver says Branson Energy is the legal owner of the oil and gas leases, and pursuant to a September 17, 2003 Freeze and Turnover Order, he has filed an emergency motion for the imposition of a constructive trust on the subject leases. Alco contends that it is the owner of the leases because Branson Energy breached its contractual obligations.[1]

The court first considered the receiver's motion for constructive trust in its October 13, 2005 order and found that Alco conveyed Branson Energy a fee simple determinable interest in the leases, conditioned upon Branson Energy's compliance with certain contractual obligations under the purchase agreement.

---

[1] For a complete recitation of the background facts, see Doc. No. 394.

The court granted Alco's motion for an evidentiary hearing because of several factual discrepancies regarding the parties's contractual performances. The court tried to narrow the determinative issues about ownership of the leases by directing the parties to submit statements addressing the following issues: Branson Energy's compliance with the monetary requirements of the purchase agreement; Branson Energy's transfer of Capital Equities Group shares pursuant to the purchase agreement; Alco's production of a title opinion under the purchase agreement; and whether the oil wells located on the properties subject to the lease—producing oil in August of 2002—sustained the minimum production requirement.

Alco's submitted statement indicates that it doesn't dispute the following for purpose of the receiver's motion: (1) Branson Energy paid its initial monetary requirements—$40,000 in earnest money, as well as an additional payment of $40,000 due upon the execution of the agreement; (2) Alco didn't provide Branson Energy with an acceptable title opinion; and (3) Alco didn't sustain the minimum production requirement. The receiver now requests a ruling on the issue of ownership. Because no disputed issue of material fact remains, the court agrees that the issue of ownership is ripe for ruling.

Alco and Branson Energy executed an assignment and bill of sale that transferred title in the leases to Branson Energy conditioned on its subsequent compliance with certain contractual obligations embodied in a purchase agreement and operating agreement. Paragraphs 1 and 9 of the assignment and

2

bill of sale provides in part:

> [Alco] does hereby grant, bargain, sell, transfer, assign and convey... all [ ] working interest in and pursuant to the oil and gas leases as to all depths owned...[however]...[t]his Assignment and Bill of Sale, together with all rights, title, benefits and interests will revert back to the Assignor, should any of the terms, conditions and/or obligations of the Assignee not be met according to the schedules and/or dates described in the Purchase Agreement and Operating Agreement ...

Under the purchase agreement, Branson Energy was to tender certain purchase monies, transfer Capital Equities Group shares, provide Alco with a performance bond or letter of credit in the principal amount of $250,000, and enter into an operating agreement with Alco at or immediately before the closing. Under the operating agreement, Branson Energy was to pay Alco management fees and working capital (lease operating fees).[2] The parties disagree as to whether Branson Energy breached the terms of the operating agreement.[3]

Under the operating agreement's terms, Branson Energy was to make monthly payments to Alco of $35,000 for management fees and $350,000 for rework of the wells. The payments for rework of the wells were to be based on a prior approved authority for expenditures; the first $350,000 payment was to be advanced to Alco upon the signing of the agreement, with each subsequent monthly payment to be advanced prior to the first of each month.

---

[2] Although the issue of Branson Energy's performance under the operating agreement is outside the scope of the court's October 13 order, the court addresses the argument because such performance is material to the issue of ownership of the leases.

[3] The parties also dispute whether Branson Energy transferred the Capital Equities Group shares as required by the purchase agreement but because the receiver's motion to impose constructive trust turns on Branson Energy's compliance with the operating agreement, the court needn't address the issue.

The parties entered into the operating agreement on October 1, 2002. Alco's register report shows Branson Energy made 19 payments from August 5, 2002 to August 13, 2003, totaling $977,499.37. The parties don't dispute that these payments, indicated on the register as "lease operating fees," were made pursuant to the operating agreement. The terms of the agreement, however, required a payment of $350,000 upon entering into the operating agreement (October 1) and the record indicates Branson Energy had tendered only $52,600 by November 1.

When an agreement specifies a time for performance, time is said to be of the essence, and a party's non-performance constitutes a material breach such that the other party is discharged from its contractual duty. Atlanta Jet v. Liberty Aircraft Services, LLC, 866 So.2d 148, 150 (Fla. Dist. Ct. App. 2004)[4]. While Alco concedes that it ultimately didn't meet the production requirements, Branson Energy had a duty to tender $350,000 upon the entering of the operation agreement. On October 1, Branson Energy's performance became due, and its failure to fully perform discharged Alco of its production requirement. *See* RESTATEMENT (SECOND) CONTRACTS § 235, p 211-212 ("when performance [of a duty

---

[4] A federal district court sitting in diversity generally must follow the choice-of-law rules of the state in which the district court sits. *See* Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496-97 (1941). Although diversity of citizenship is not present in this case, our court of appeals has applied Klaxon to determine that state law governs supplemental state claims. *See* Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 681 (7th Cir. 1986). A constructive trust, like a supplemental state law claim, rests on state law, so the choice-of-law rules should come from the state in which the federal court sits. Indiana choice of law doctrine favors contractual stipulations as to governing law, Allen v. Great American Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind. 2002), and because neither party has contested the choice of law provision, nor is there reason to disregard that presumption, the contractual provision that Florida law governs the enforcement of the purchase agreement is controlling on the choice of law issue.

under a contract] is due ...  anything short of full performance is a breach, even if the party who does not fully perform was not at fault"). Accordingly, the court finds Branson Energy didn't comply with the terms of the operating agreement.

The receiver contends that the payments due under the operating agreement were based upon Branson Energy's prior approval of a list of expenditures, which Alco was to provide, and because Branson Energy never agreed to any expenditures, its performance never became due; so it didn't breach the operating agreement by not complying with the payment schedule. The court cannot agree.

The requirement that Branson Energy "spend $350,000 each month for rework based on a prior approved AFE [authority for expenditure] from Alco" conditioned Branson Energy's performance upon its approval of expenditures, and unless this condition was excused, its non-occurrence discharged Branson Energy's performance. *See* RESTATEMENT (SECOND) CONTRACTS §§ 224- 226. And while the parties dispute whether Branson Energy approved the necessary expenditures, this determination is immaterial given that Branson Energy's conduct waived the condition of prior approval.

A condition, like any other contractual right, can be waived by a party's conduct. RESTATEMENT (SECOND) CONTRACTS §§ 84, 246. Proof of intent to relinquish a known right may be implied from conduct or acts that lead a party to believe a right has been waived, but a party's conduct must establish clear relinquishment so the conduct relied upon to do so must make out a clear case of waiver.

5

Costello v. The Curtis Bldg. Partnership, 864 So.2d 1241, 1244 (Fla. Dist. Ct. App. 2004).

If Branson Energy never approved the expenditures, as the receiver argues, it had the right not to perform until Alco tendered an acceptable expense report. Branson Energy, though, chose not to exercise its contractual right; instead it continued to perform, making payments of $3000 on October 15 and November 1, despite knowledge of the non-occurrence of the condition. Branson Energy's conduct demonstrates a clear intent to relinquish the right to pre-approve expenditures such that it cannot now rely upon Alco's alleged failure to provide an expense report as an excuse for not tendering full payment.

The receiver argues that Alco can't simply take over $1.2 million in Branson Energy's money, fail to operate the fields, and then re-take the leases when the money stops. The court agrees that a benefit unjustly conferred on a party can give rise to an action for breach of contract or unjust enrichment, *see* Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002), but the receiver seeks to impose a constructive trust on specific property which requires a showing that Branson Energy — the party who engaged in the prohibited conduct— holds title in the property. Morfin v. Estate of Martinez, 831 N.E.2d 791, 801 (Ind. App. 2005).[5]  Since the undisputed facts show Branson Energy didn't comply with the

---

[5] A subsequent wrongdoer can be the subject of constructive trust, but because Alco is removed from the fraudulent conduct which was used to illegally acquire investors's funds, equity permits the court to impose a constructive trust on Alco if the leases are traceable to the wrongful behavior, such that Alco is under a duty to convey its interests in the leases to the investors. Great-West v. Knudson, 534 U.S. at 213 ("a plaintiff could seek restitution in equity,

6

operating agreement's terms, title in the leases reverted to Alco pursuant to the assignment and bill of sale, and the court cannot impose a constructive trust on the subject oil and gas leases.

SonCo Holdings, LLC has sought to intervene pursuant to Rule 24(a), claiming it owns a production payment interest in the subject oil and gas leases.[6] As the party seeking to intervene, SonCo has the burden of demonstrating that (1) its application is timely; (2) it is claiming an interest relating to the property or transaction which is the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the receiver and Alco aren't adequate representatives of its interest. Sokaogon Chippewa Community v. Babbitt, 214 F.3d 941, 945-46 (7th Cir.2000). Impairment exists when "the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683

---

ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"). When BET initially obtained title to the leases with the investors's funds, it did so under circumstances that rendered it unconscionable for BET to retain an interest in the leases, so BET was been under a duty to convey its interest in the leases. The receiver, though, hasn't shown that Alco acquired title in the leases by fraud, that is, through the use of embezzled investor funds. Alco isn't being unjustly enriched by keeping title in leases it initially owned, so it isn't subject to an equitable duty to convey the leases.

[6] SonCo's royalty interest in the leases was created by a contract between Alco and Domain Energy Finance Corporation; the interest arose out of Alco's working interest in the oil and gas leases and was eventually acquired by SonCo in March of 2003. Because SunCo doesn't argue that a federal statute gives it an unconditional right to intervene, its motion is governed by Rule 24(a)(2). Shea v. Angulo,19 F.3d 343, 346 (7th Cir. 1994).

7

F.2d 201, 204 (7th Cir.1982).

SunCo says the determination of who owns the leases impairs its interest since the value of its interest could be decreased based upon who operates the leases. The value of SunCo's interest, though, isn't the determinative issue; rather, SunCo must show that the court's determination of ownership would have preclusive effect on its pending state claims against Alco. *See e.g.* Meridian Homes v. Nicholas W. Prassas 683 F.2d at 204 ("potential foreclosure is measured by the general standards of stare decisis").

SunCo has sued Alco in state court alleging conversion, fraud, and breach of contract; SunCo has also sought to quiet its title in the working interest. The first three claims arise from its contractual right to a percentage of the profits from the operation of the leases, as well as its right to name the operator of the Hull-Silk Unit. Regardless of who is determined the owner of the leases, because the validity of the leases that give rise to SunCo's rights aren't being challenged, SunCo isn't precluded by judgment from enforcing its rights under its agreement with Alco. *See e.g.* Hilton v. Atlantic Ref. Co., 327 F.2d 217, 219 (5th Cir.1964). SunCo's action to quiet title also isn't impaired because the determination of who owns the leasehold interest is a separate question of law with no preclusive effect on determining the validity of SunCo's royalty interest. *See e.g.* Amerada Hess Corp. v. Morgan, 426 So.2d 1122, 1126-1127 (Fla. App. 1983). Because nothing in today's holding effectively precludes SunCo from enforcing its rights against Alco, SunCo's motion to intervene is denied.

8

  For the foregoing reasons, the court DENIES the receiver's motion for constructive trust [Doc. No. 358], VACATES its October 13, 2005 order to the extent it grants Alco's motion for an evidentiary hearing, DENIES SunCo's motion to intervene [Doc. No. 400], and DENIES Alco's motion for an expedited hearing as moot. [Doc. No. 435].  Also pending are Alco's motions to strike the receiver's proposed stipulations, as well as certain evidence and arguments the receiver relied upon in his request for ruling. Because the court denies the receiver's motion, even when the evidence at issue in Alco's motions to strike was considered, both motions to strike [Doc. Nos. 402 and 420] are DENIED as moot.

  SO ORDERED.

  Entered: <u>February 13, 2006</u>

                <u>　/s/ Robert L. Miller, Jr.　</u>
                Chief Judge
                United States District Court

cc: counsel of record