UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff | )<br>) |
| vs. | )    CAUSE NO. 3:00-CV-446-RM<br>) |
| FIRST CHOICE MANAGEMENT SERVICES, INC. and GARY VAN WAEYENBERGHE, | )<br>)<br>)<br>) |
| Defendants | ) |

OPINION AND ORDER

ALCO Oil & Gas and the court-appointed receiver for First Choice Management Services file their joint submission regarding the ownership of certain oil and gas leases that have been the subject of considerable litigation before this court. The parties jointly move the court for an order which provides for the following: (1) the procedures for clearing all clouds on the tile of the leases; (2) removes individuals who have deprived defrauded investors and other victims of their access to the subject leases; and (3) grants the receiver the ability to oversee the equitable delivery of title to the proper parties. In light of the newly discovered evidence, the court grants their joint motion.[1]

The dispute as to the owner of the subject oil and gas leases is before this court as an outgrowth of the receiver's attempt to collect defrauded investor funds

---

[1] The court also grants the parties' joint motion to correct clerical errors in the exhibits attached to their joint submission [Doc. 479].

that were used by Branson Energy Texas in the purchase of the oil and gas leases from ALCO. The court first addressed the ownership of the leases in its October 2005 order, but because the record before the court then showed several issues of fact as to the parties' contractual compliance, the court deferred ruling on the issue of ownership and directed the parties to submit statements addressing their respective obligations under the leases purchase agreement.

The court revisited the ownership issue in its February 2006 order. The record before the court at that point showed ALCO and BET had executed an assignment and bill of sale that transferred title in the leases to BET conditioned on its subsequent compliance with its contractual obligations under a lease operating agreement the parties purportedly entered into on October 1, 2002. The October 2002 operating agreement required that BET "spend $350,000 each month" for well rework. Because the record demonstrated that BET had not complied fully with its monthly monetary obligations, the court determined that title reverted to ALCO and denied the receiver's motion for imposition of a constructive trust on the leases.

The parties ask the court to reconsider its February 2006 order in light of newly discovered evidence. Rule 60 allows relief from an order due to "newly discovered evidence which by due diligence could not have been discovered" earlier. FED. R. CIV. P. 60(B)(2). For the court to reconsider its prior order, the parties must show that: (1) the evidence was discovered following the February 2006 order; (2) due diligence on the part of the parties to discover the new

2

evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that reconsideration of the claim would probably produce a new result. *See* In re Chicago, Milwaukee, St. Paul & Pacific Railway Co., 78 F.3d 285, 293-294 (7th Cir. 1996).

The parties submit an operating agreement executed July 25, 2002, along with the August 2006 affidavit of Ashvin Mascarenhas in support of their request for reconsideration.  Mr. Mascarenhas is the sole principal of SOAM Oil and Gas Investments, the entity which owns Alco. He has investigated the circumstances surrounding the oil and gas deal between BET and ALCO, and his affidavit provides the following:

> I have now obtained and reviewed ALCO documents which had not previously been available to me and all of ALCO's filings, which for the most part, were not provide to me until 2005 through local counsel. These document establish that Michael Wilson was proving false information to the Court, that the Register Report and financial documentation show that BET was not in default, that the purported October 1st, 2002, Operating Agreement could not have been the operating agreement executed at the time of the July 2005, 2002, closing, and that the December 31st, 2004, title opinion of Robert C. Russell, Jr., presents the correct state of the title for the subject oil and gas interests.

Based on Mr. Mascarenhas's testimony, the parties say the October 2002 operating agreement that Mr. Wilson provided to AlCO's counsel and the receiver, and subsequently filed with this court, was a sham; the true operating agreement was executed at the closing on July 25, 2002.  The court agrees.

3

The purchase agreement and bill of sale for the leases — both executed on July 25, 2002 — require and acknowledge that an operating agreement was in place at the time of their execution. Mr. Wilson also testified that the governing operating agreement was executed at closing. Any operating agreement Mr. Wilson contrived after the July 2002 closing wasn't contemplated by the sale's other documentation, and doesn't govern the parties performance obligations. The true operating agreement was the same standard-form as the October 2002 agreement, except that it required BET to tender only a $35,000 monthly payment for operations. Given the deceit by Mr. Wilson as set forth in Mr. Mascarenhas's affidavit, and that the true operating agreement significantly alters BET's contractual obligations, the court agrees that justice requires the court to revisit the issue of ownership.

A review of BET's register report and Bradley Ray's affidavit persuades the court that BET didn't default on its contractual obligation.[2] BET made every monthly payment related to the true operating agreement, so the court finds that the title to the subject oil and gas leases vests with Branson Energy Texas, Inc. *See* AFFIDAVIT OF ROBERT C. RUSSELL, JR.

The receiver and ALCO also request that the court order all claimants that bring a post July 25, 2002 claim to the subject leases post a $500,000 bond to cover the cost of fees, expenses, and damages in the event the receiver prevails and

---

[2] Mr. Ray asserts he was intimately involved in the oil and gas deal between BET and ALCO through the analysis he provide for BET.

4

the court finds that such claim was made in bad faith. The receiver and ALCO identify three possible claimants: (1) the Wilsons, (2) SonCo, and (3) and certain interlopers they refer to as the "lease vultures." Given the fraud perpetrated by these claimants, the receiver and ALCO say these parties cannot make a good faith claim, so a bond is necessary to prevent further delays. The court cannot agree.

While the receiver and ALCO may be confident that no parties are in the position to make a good faith claim to the leases, the court has reservations about requiring a bond without giving the identified parties an opportunity to object. Parties that make claims which are proven to be made in bad faith may be required to pay opposing parties' cost and fees, but the record before the court at this point doesn't justify requiring such a significant barrier before asserting a claim to the leases. The court declines to grant the parties' request for a bond.

Accordingly, the court VACATES its February 13, 2006 [Doc. 436] and FINDS:

    1.    That this court retains jurisdiction over the leases, all parties relative to such leases, and claims which may be asserted against such leases, including any claims by SonCo Holdings, LLC.

    2.    ALCO is the operator designated by the receiver.

    3.    That based upon new evidence, the court's findings in its February 13, 2006 order, relative to SonCo's standing to intervene herein, its ownership interest in any of the subject leases and/or the validity of its

5

royalty interest, were issued in error and SonCo has a right to pursue its claims before this court in such manner as all other claimants.

4. That jurisdiction over the leases at issue was initially established by this court's order confirming appointment and power of receiver [Doc. No. 145] issued on December 11, 2002, which in accordance with 28 U.S.C. §754 was duly filed with the Clerk of the United States District Court for the Northern District of Texas on December 17th, 2002, and its order requiring freeze or turnover of First Choice Management Service, Inc., assets and the proceeds thereof [Doc. No. 178] issued on September 17, 2003.  These orders apply to the oil and gas assets claimed by BET, and/or ALCO, and to any and all parties who have sought and seek to negatively affect the assets claimed by BET and/or ALCO, and this finding applies to any state court proceedings instituted by SonCo or any other party subsequent to the issuance of such orders of this court, including, but not limited to, those proceedings entitled ALCO Oil & Gas Co., LLC -v- SonCo Holdings, LLC, et al. - and - Lapeer County Bank & Trust, et al. -v- Michael T. Wilson, et al., District Court, Archer County, Texas, Case No.: 04-07-0082A-CV.

5. That it is in the best interest of the receivership that such litigation or any other proceedings and/or actions, known or unknown, which may have a negative effect upon the title and/or operation of oil and gas interests pursuant to such leases in question, be stayed and enjoined,

6

as this court has previously ordered through its order for stay [Doc. No. 62], issued on March 20, 2001, which was directed to relevant pending claims in state court proceedings in the States of California and Nevada.

    6.    That it is in the best interest of the receivership that the court establish a procedure for the orderly and efficient administration and disposition of all claims against the receivership property and such procedure shall be the sole and exclusive procedure for claims against such property by any party, including SonCo.

The court also GRANTS the following relief requested by the JOINT SUBMISSION and hereby ORDERS, DECLARES AND DECREES:

    1.    That title to the leases at issue is in BET and all issues relative to such title have been resolved and conclusively adjudicated, except to the extent they may otherwise be determined pursuant to the terms and provisions of this order.

    2.    That a separate order of stay and injunction shall be issued against any and all proceedings and/or actions instituted in any state in which the receiver has perfected jurisdiction over property pursuant to 28 U.S.C. §754.

    3.    That such order of stay and injunction shall be applicable to all proceedings that may have a negative effect upon the leases, title to which has been awarded by this court, and which are subject to the receivership established and empowered by this court.

  4. That ALCO, as the operator designated by the receiver, shall not be subject to the freeze order [Doc. No. 178] of this court of September 17, 2003, and as provided by the order [Doc. No. 471] of this court issued on June 26, 2006, shall be free to operate such leases of the subject oil and gas assets, including repairs, operations and improvements, subject to its own direction, costs and discretion.

  5. That nothing in this order shall impede ALCO's ability to proceed in all matters and/or before all government agencies, boards and/or commissions as the designated, authorized and lawful operator of such leases.

  6. That for so long as this court retains jurisdiction over the leases, ALCO shall not be liable for reasonable and good faith business decisions taken as the designated and authorized operator of the lease assets.

  7. That the receiver shall immediately provide for notice locally and regionally, in a manner consistent with federal bankruptcy practice, regarding the following:

    a. Immediate notice of the continued freeze of the lease assets pursuant to the order requiring freeze [Doc. No. 178 issued on September 17, 2003; the order [Doc. No. 471] issued on June 26, 2006; the order of stay and injunction issued herewith applicable to any court proceedings regarding the leases other than those occurring in the Northern District of Indiana, and the injunction enjoining any

8

actions negatively affecting the leases and/or the receiver's custody of the leases;

      b.      Immediate notice of this order, which has superceded the court's opinion and order [Doc. No. 436] of February 13, 2006, the award of title to BET and those provisions which establish the sole and exclusive procedure for claims against such title by any party, including SonCo;

      c.      Immediate notice that any claim brought by any person or party shall be made in good faith, subject to costs, fees and sanctions;

      d.      Immediate notice to post-July 25, 2002, claimants to the leases, which provides a 30-day period during which the claimant and the receiver may reach a resolution regarding the validity of such claim;

      e.      Immediate notice that only after claimant has been unable to reach a resolution with the receiver, having made a good faith attempt to resolve such claim, claimant must file such claim with this court within 45 days of this order;

      f.      Immediate notice that upon receipt of such filed claim the receiver shall have a period of 30 days within which to issue a response to such claim, provided there is no outstanding discovery or

document request, or pending motion related to discovery, which shall toll the issuance of the receiver's response to such claim;

g.     Any party having received a demand by the receiver for discovery, including, but not limited to, one for the production of documents, coupled with a copy of this court's freeze order [Doc. No. 178] of September 17th, 2003, or a subpoena to such effect, shall not be entitled to have its claim against the leases heard by the court if it shall fail to fully cooperate in a timely manner with all such discovery and document requests of the receiver, and upon notice of such failure to the court by the receiver, such claim shall be subject to summary dismissal by the court;

h.     Nothing in this order shall preclude the receiver from requesting an extension of time for the issuance of a response to such claim, once there has been compliance by the claimant with all discovery and document requests of the receiver;

i.     Immediate notice that if the receiver and the claimant have been unable to resolve the claim at issue within 30 days after the issuance of the response to such claim by the receiver, such claim shall be docketed for hearing by this court; and

j.     Immediate notice that the failure of any person, firm, corporation, limited liability company, entity or other person to file a claim in the manner herein provided shall constitute a waiver and

forfeiture of such claim for the purpose of title to or interest in the leases.

8. That upon the resolution of all claims submitted to the court against the leases, if any, the receiver will be vested with legal and equitable title to the leases and may dispose of them in any reasonable manner, subject to the approval of the court.

SO ORDERED.

Entered:   September 5, 2006

  /s/ Robert L. Miller, Jr.  
Chief Judge  
United States District Court

cc: counsel of record