UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SECURITIES & EXCHANGE COMMISSION, | ) ) | |
| PLAINTIFF, | ) ) ) | |
| vs. | ) ) | CAUSE NO. 3:00-CV-446-RLM-CAN |
| FIRST CHOICE MANAGEMENT SERVICES, INC. AND GARY VAN WAEYENBERGHE, | ) ) ) ) | |
| DEFENDANTS. | ) ) | |

OPINION and ORDER

CRM Energy Partners, Inc. and John W. Hannah, non-parties to the case, move the court to reconsider its December 5, 2014 show cause order. Receiver Joseph D. Bradley sought sanctions against CRM Energy and Mr. Hannah for two reasons: (1) CRM Energy and Mr. Hannah filed an Operator's Oil and Gas Lien Statement in the Osage County, Oklahoma records against the receivership's Branson Energy Inc. leases located in Osage County, Oklahoma and filed a related petition for lien foreclosure in the District Court in Osage County (the local state court) that named the Receiver as a party defendant; and (2) CRM Energy and Mr. Hannah hadn't complied with the court's May 22, 2014 "Confirmation of Sale Order for Branson Energy, Inc. Leases" that directed parties in possession of or with control over documents pertaining to the operatorship or ownership of the Branson Energy leases, Branson Energy itself, or Branson Energy's property to turn over the

documents to the Receiver. The court concluded the lien and foreclosure petition violated the court's 2000 and 2002 orders prohibiting suit against the Receiver in forums other than this court for his actions in his capacity as Receiver, and consequently, ordered CRM Energy and Mr. Hannah to remove the lien and dismiss the foreclosure petition. The court also ordered CRM Energy and Mr. Hannah to turn over documents in their possession or control that belong to the receivership. Lastly, the court denied the Receiver's request for sanctions against the Oklahoma based attorneys, Lee I. Levinson, Terence P. Brennan, Trevor R. Henson, and Evan McLemore of Levinson, Smith, and Huffman, P.C., that represent CRM Energy and Mr. Hannah in the lien foreclosure suit. The court gave CRM Energy and Mr. Hannah until December 15, 2014, ten days from the date of the order, to comply with the order or to show cause why they shouldn't be held in contempt for their failure to do so.

On December 18, CRM Energy and Mr. Hannah filed a motion for reconsideration of the show cause order. The Receiver opposes the motion, and CRM Energy and Mr. Hannah replied to his response.[1]

CRM Energy and Mr. Hannah say the show cause order contains factual and legal errors. They contend that the court incorrectly found they were acting in concert with the parties, incorrectly found the relationship between the Receiver and Mr. Hannah wasn't a continuation of the business, erroneously

_____

[1] CRM Energy and Mr. Hannah filed identical reply briefs on February 5, 2015 and on February 12, 2015.

concluded that Mr. Hannah didn't operate the leases for the Receiver's benefit, incorrectly determined the date when the lien was created, and erroneously found the lien seeks an ownership interest in the leases. CRM Energy and Mr. Hannah also claim to have turned over the documents that belong to Branson Energy, complain that the court didn't order the return of certain property on the leases, and ask the court to stay the imposition of sanctions until the matter is resolved on appeal. In his response, the Receiver asks the court to make several factual findings related to non-parties CRM Energy and Mr. Hannah.

I. STANDARD OF REVIEW

CRM Energy and Mr. Hannah don't cite a legal basis for their motion to reconsider. Federal Rule of Civil Procedure 59(e) allows a court to alter or amend a judgment based on newly discovered evidence or when the judgment reflects a manifest error of law or fact. LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995). Rule 59(e) motions aren't to be used to introduce evidence that was available earlier or to advance arguments that could and should have been presented before the court entered judgment. Id. Alternatively, Federal Rule of Civil Procedure 60(b) permits a court to afford relief from a judgment or order for newly discovered evidence, among other reasons. CRM Energy's and Mr. Hannah's motion for reconsideration was filed thirteen days after the show cause order was entered, so it is timely under

either rule.[2] The court looks to the substance of the motion to reconsider to determine the appropriate rule under which the motion should be analyzed. Obriecht v. Raemisch, 517 F.3d 489, 493 (7th Cir. 2008). CRM Energy and Mr. Hannah assert errors of fact, a basis encompassed by both Rule 59(e) and Rule 60(b), and errors of law, a basis encompassed by Rule 59(e), but not by Rule 60(b). Id. at 493-494. So, the court treats their motion to reconsider as one made pursuant to Rule 59(e), which covers all of their arguments.

## II. LIEN & FORECLOSURE PETITION

CRM Energy and Mr. Hannah continue to assert that this court doesn't have personal jurisdiction over them because they aren't parties to the receivership suit. CRM Energy and Mr. Hannah say the court "admittedly does not have personal jurisdiction over" them and "concedes that it does not have personal jurisdiction" over them. In the show cause order, the court found quite the opposite. The Barton doctrine, under which a party must first obtain leave of the court that appointed a receiver to sue the receiver in another forum for his actions as the receiver, Barton v. Barbour, 104 U.S. 126 (1881), combined with the court's blanket injunction that implemented the Barton

---

[2] Rule 59(e) motions must be filed within 28 days of the judgment. FED. R. CIV. P. 59(e). Rule 60(b)(1), (2), and (3) motions must be filed within a year of the judgment, and Rule 60(b)(4), (5), and (6) motions must be filed within a reasonable period of time. FED. R. CIV. P. 60(c)(1).

doctrine in this case,[3] authorizes the court to reach non-parties (like CRM Energy and Mr. Hannah) that have filed suit against Mr. Bradley in his capacity as the court-appointed Receiver in this case and in Oklahoma state court. Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006). The court has personal jurisdiction over CRM Energy and Mr. Hannah for the limited purpose of determining the fate of their lien and petition for lien foreclosure.

CRM Energy and Mr. Hannah again cite United States v. Kirschenbaum, 156 F.3d 784 (7th Cir. 1998), arguing that under Federal Rule of Civil Procedure 65(d), a non-party can only be subject to an injunction if the non-party is acting in concert with an enjoined party or is an agent, employee, officer, etc. of the party. They contend the Kirschenbaum decision directly contradicts the Barton doctrine. The court disagrees. As discussed in In re Linton, 136 F.3d 544 (7th Cir. 1998),[4] it has "long been established that a receiver could not be sued without leave of the court that appointed him." Id. at 545 (protection of equity receiver under the Barton doctrine extended to

---

[3] As described in the show cause order, the stay is found in the 2000 "Order Modifying Order of Preliminary Injunction and Appointing Receiver" and the 2002 "Order Confirming Appointment and Powers of Receiver."

[4] CRM Energy and Mr. Hannah claim the only authority the court cited that supports the prohibition of suits against the Receiver in different forums is Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543 (6th Cir. 2006). On the contrary, the court also cited In re VistaCare Grp., LLC, 678 F.3d 218 (3d Cir. 2012), and In re Linton, 136 F.3d 544 (7th Cir. 1998).

bankruptcy trustees).[5] Without this injunction, a Receiver "is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, [and] his work for the court will be impeded." Id. The Barton doctrine has been a matter of federal common law for more than a hundred years, id., and CRM Energy and Mr. Hannah cite no authority in which the doctrine has been disturbed. Rule 65(d) applies to injunctions generally, but the Barton doctrine only applies in circumstances in which a court has appointed a receiver or a bankruptcy trustee. Rule 65(d) doesn't limit or contradict the Barton doctrine.

The Receiver asserted a theory of liability under Rule 65(d) in the motion for sanctions and in his response to the motion for reconsideration again urges the court to make a factual finding that CRM Energy and Mr. Hannah were acting in concert with Branson Energy to violate the 2003 "Order Requiring Freeze or Turnover of First Choice Management Services, Inc. Assets and the Proceeds Therefrom." CRM Energy and Mr. Hannah make a related argument

---

[5] In In re Linton, 136 F.3d 544 (7th Cir. 1998), the court mused over the possible remedies when a non-party brought suit in state court without first seeking leave of the bankruptcy court:

> We need not consider what remedies the trustee might have if, as indeed happened in this case, the suit is brought in state court without the plaintiff's seeking the leave of the bankruptcy court, or after that leave is denied. Of course the trustee could move the state court to dismiss the suit, or to stay it until the necessary leave was obtained; and such a motion presumably would be granted. A more interesting question is whether he could obtain an injunction from the bankruptcy court directing the plaintiff in the state court action to dismiss the suit.

Id. at 546.

based on a hypothetical. They argue that had the court found that CRM Energy and Mr. Hannah were acting in concert with parties to the case, which it didn't, the finding would have been erroneous because the determination must be made in a proceeding to which they are a party. *See* <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 112 (1969) (non-party with notice can't be held in contempt until shown to be in concert or participation in a proceeding to which the non-party is a party). Uncertain of how to state it more clearly, the court reiterates its holding from the show cause order: "Regardless of whether CRM Energy and Mr. Hannah acted in concert with Branson Energy, the Receiver doesn't provide the court with evidence of their knowledge of the 2003 freeze order." To be bound by an injunction, Rule 65(d)(2) requires the non-parties acting in concert with the parties to have "actual notice of [the order they allegedly violated] by personal service or otherwise." The Receiver's response also asks the court to make a factual finding that CRM Energy, Mr. Hannah, and their attorneys had notice of the orders in this case, including the 2003 Freeze and Turnover Order, based on the evidence presented by CRM Energy and Mr. Hannah in their motion to intervene. The Receiver doesn't indicate what specific evidence shows that CRM Energy and Mr. Hannah had knowledge of the 2003 Freeze and Turnover Order, and the court declines to scour the record to discover how and when they supposedly gained that knowledge. The Receiver still hasn't shown that CRM Energy and Mr. Hannah had knowledge of the order they allegedly violated (in concert with Branson

Energy), so the court needn't reach the question of whether they were acting in concert with Branson Energy or institute proceedings in which they, as non-parties, are parties.[6]

CRM Energy and Mr. Hannah protest that even under Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543 (6th Cir. 2006), a decision cited by the court, due process demands that a party with a colorable claim against a Receiver must be heard. The Barton doctrine doesn't contravene this assertion; it simply requires the party to first apply to the court that appointed the receiver, so the court can exert some control over the claims related to its appointed receiver and the receivership it created. *See* Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 552 (6th Cir. 2006) ("To the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard, but the district court exercises significant control over the time and manner of such proceedings.").

CRM Energy and Mr. Hannah next argue that if the Barton doctrine applies, their Oklahoma litigation falls within the limited statutory exception found in 28 U.S.C. § 959(a) "for situations where the receiver was 'continuing' the debtor's business, rather than simply administering the estate." In re

---

[6] In his response, the Receiver also asks the court to find that Mr. Hannah was (and is) an agent and officer of Branson Energy. The court declines to do so. The Receiver poses his request in a response to a motion for reconsideration, presents no new evidence, and advances an argument that could and should have been presented in his motion for sanctions, but was not. *See* LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995) (motion to reconsider shouldn't be used to present an argument or evidence that was available at the time of the original motion).

VistaCare Grp., LLC, 678 F.3d 218, 226-227 (3d Cir. 2012). CRM Energy and Mr. Hannah now claim the Receiver was continuing the business of Branson Energy in his dealings with them.

To begin with, CRM Energy and Mr. Hannah didn't address the Barton doctrine or argue the § 959(a) exception applied to their interactions with the Receiver in their response to the motion for sanctions. *See* LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995) ("[A] motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment."). Second, CRM Energy and Mr. Hannah don't offer newly discovered evidence to support this assertion. *See* Id. (A motion to alter or amend a judgment also isn't to be used "to present evidence that was available earlier."). CRM Energy and Mr. Hannah cite a much quoted September 26, 2006 email from the Receiver's counsel to Mr. Hannah, *see e.g.,* CRM Energy and Mr. Hannah Mot. Intervene 9, Doc. No. 881 ("In that letter, the Receiver told the Intervenors: 'You can return to Tennessee and wait for check. You will be compensated for all your time, effort and money.'"),[7] and several of the Receiver's Status Reports filed in the case over the years. They produce no new evidence about their long and contentious relationship with the Receiver and no evidence (or even allegation) of how their "operation" of the leases benefited

---

[7] The Receiver disputes the context and meaning of the email, as he did when it was raised in the motion to intervene and thereafter.

the Receiver or the defrauded investors. On the other hand, the Receiver has repeatedly emphasized the damage CRM Energy and Mr. Hannah have inflicted on the receivership estate by remaining on the leases, withholding information from the Receiver, and aggressively litigating their purported rights to the leases only as the receivership was winding down.

Nonetheless, the court must address CRM Energy's and Mr. Hannah's claim that the court didn't explain its conclusion that they weren't operating the leases for the benefit of the Receiver. The court's analysis of the § 959(a) exception was cursory – because CRM Energy and Mr. Hannah hadn't asserted that it applied to them. First, the court reviewed the Receiver's action that provoked the motion to intervene and, when that failed, the Oklahoma litigation:

> The Receiver wants to sell the leases, which are an asset of the receivership, to Wilson Operating Company, thereby liquidating the asset for the benefit of the defrauded investors. The Receiver's actions concern an administrative task of the receivership – liquidating assets to benefit and ultimately close the receivership estate.

Show Cause Order 2-3, Doc. No. 962. The court examined the information in the record about the Oklahoma litigation:

> The lien claims Branson Energy Partners and Joseph Bradley owe CRM Energy and Mr. Hannah $1,368,684.30 for "failure to pay the Owners/Non-operators' proportionate share of the expenses for the material, services, labor and operating" of the leases. The related foreclosure petition claims from 2002 to the present, CRM Energy and Mr. Hannah performed operational, administrative, and managerial work on the leases, provided equipment, and retained independent well service contractors to perform work on the leases. Neither document mentions the receivership or Mr. Bradley's

capacity as a Receiver, although "Receiver" follows his name in the list of last known mailing addresses for Owners/Non-operators. Mr. Hannah's affidavit attached to the lien states that Mr. Bradley is a Receiver who claims an ownership interest in the leases and CRM Energy operated the leases for the benefit of Branson Energy and Mr. Bradley.

Id. at 3. Finally, the court looked at the timing of the Oklahoma filings:

Mr. Hannah's untimely motion to intervene in the receivership to challenge the ownership of the leases was denied, upon reconsideration, in March. In April, Mr. Hannah asserted his role as the operator of the leases who was owed payment for services performed in Oklahoma state court. The lien and the foreclosure petition are simply a different way to obtain a stake in the disposition of the leases.

Id. at 4. The court found the lien was "disguised as a dispute about an ongoing business relationship," but the actual dispute concerned the administration of the receivership estate through the disposition of the leases. Id. at 3. "If the Receiver had retained an operator for the leases to collect profits for the defrauded investors by maintaining the business," the court noted that suit under § 959(a) may be appropriate to settle a dispute between the operator and the Receiver. Id. at 3-4. The court relied on the litigation history of the parties in this court and the timing of the Oklahoma litigation to conclude: "Contrary to Mr. Hannah's claim, however, he didn't operate the leases for the receivership's benefit" and the exception didn't apply. Id. at 4. Thus, the court explained its limited conclusion that CRM Energy and Mr. Hannah didn't operate the leases for the benefit of the defrauded investors.

This leads to two related, but irrelevant, arguments advanced by CRM Energy and Mr. Hannah. First, they argue the court erroneously concluded the

lien was created when they filed it in the Osage County records. They assert that under Oklahoma law an oil and gas operators' lien is created as of the moment the operations begin. So CRM Energy and Mr. Hannah assert the lien was created in 2002, when they allegedly began operating the leases. The court simply relied on the date the lien was filed as evidence of the true intentions of CRM Energy and Mr. Hannah; the court made no "finding" about when the lien was legally created.[8] CRM Energy and Mr. Hannah filed the lien in the Osage County records on April 21, 2014, about twelve years after they allegedly began operating the leases. In contrast, they filed the lien only thirty-four days after the court denied CRM Energy's and Mr. Hannah's motion to intervene on March 18.

Second, CRM Energy and Mr. Hannah quibble with the court's characterization of the lien and related foreclosure petition as "a different way to obtain a stake in the disposition of the leases." They claim they don't seek an ownership interest, but only compensation for their years of service. This is a fair characterization of the general purpose of a lien and petition for lien foreclosure, but the property and the parties involved in this dispute are far from typical. In a letter to the Receiver dated May 23, 2014, counsel for CRM Energy and Mr. Hannah maintained that this court had no power to render

_____

[8] Moreover, the court didn't decide whether or how Oklahoma law applies to the lien or the petition for lien foreclosure.

judgment against CRM Energy and Mr. Hannah, their lien, or the lien foreclosure suit and concluded as follows:

> . . . any attempt to take possession of the SW Avant Leases, assign the same, transfer operatorship, or any other such action affecting Bill Hannah, CRM Energy, or the SW Avant Leases in an attempt to preempt or usurp Bill Hannah or CRM Energy's lien will be considered invalid and constitutes a bad-faith trespass on the part of the entities who trespassed, or authorized said trespass.

> Nevertheless, in the spirit of compromise, we offer to take sole possession, operatorship, and ownership of the SW Avant Leases "as is where is" in lieu of proceeding with the Foreclosure action.

The lien and the pending foreclosure action have halted the transfer of the leases to a buyer, which has consequently halted the winding down of the receivership. CRM Energy and Mr. Hannah want to obtain ownership of the leases, and the lien and foreclosure petition are simply another tactic they have employed in their pursuit of this goal.

In conclusion, CRM Energy and Mr. Hannah didn't initially claim the § 959(a) exception applied to them and don't support this new argument with newly discovered evidence. The history between the parties (and non-parties) and the timing of the Oklahoma litigation combined with the lack of evidence or allegation of a benefit to the receivership confirms that over the past twelve years, CRM Energy and Mr. Hannah weren't operating the leases for the benefit of the defrauded investors.

In his response, the Receiver again urges the court to exercise personal jurisdiction over CRM Energy and Mr. Hannah because they wanted to intervene in this case. The Receiver argues CRM Energy and Mr. Hannah have

more contacts with the Northern District of Indiana – through their motion to intervene, the draft complaint that accompanied that motion, and their attendance at the related hearing – than the non-parties in S.E.C. v. Homa, 514 F.3d 661 (7th Cir. 2008). But the non-parties in S.E.C. v. Homa submitted to the court's jurisdiction under Federal Rule of Civil Procedure 65(d) because they had actual notice of the pertinent court order and they actively helped a party violate that order. Id. at 674-675. The application of Rule 65(d) superseded the non-parties' absence of contacts with the forum. Id. at 675.

In their reply, CRM Energy and Mr. Hannah say they agree with the Receiver's suggestion that the court hold an evidentiary hearing on the motion. The court can't find this suggestion in the Receiver's response. Regardless, no new evidence is suggested in either the motion for sanctions or the motion for reconsideration. A hearing isn't necessary.

### III. DOCUMENTS RELATED TO THE LEASES

On May 22, 2014, the court entered a "Confirmation of Sale Order for Branson Energy, Inc. Leases" that ordered:

> **Documentation Related to Operations of Branson Energy leases**: Any entity or person in possession or control of information pertaining to the operatorship or ownership of the Branson Energy leases, Branson Energy, or any of the equipment, chattels, fixtures, structures, and other related property, including all documentation regarding production from the Branson Energy leases, shall turn such information over to Wilson (or its agent or designee) within three (3) business days. If such information rightly belongs to Branson Energy, the originals of such information shall be turned over to Wilson or its designee or agent.

Doc. No. 922. Oklahoma counsel for CRM Energy and Mr. Hannah confirmed that they received a copy of the sale order in the May 23, 2014 letter to the Receiver.[9] In the show cause order, the court reiterated the sale order's requirement related to documentation and specifically ordered CRM Energy and Mr. Hannah to turn over documents that are the property of the receivership. CRM Energy and Mr. Hannah say they complied with the orders when they turned over the documents that belonged to Branson Energy at the time of the closing in 2002. The Receiver asserts they haven't turned over copies of the documents related to the leases that were generated over the past twelve years. Through his own investigation, the Receiver says he located copies of documents related to the lease titles and the funds used to purchase the leases, $50,000 in equipment, and the bond. The Receiver still needs documents:

- showing the use of defrauded investor funds;
- showing the use of the proceeds of the lease production;
- related to the production and expenses of the leases; and
- related to employees, corporate, financial, and regulation.

The Receiver points to CRM Energy's and Mr. Hannah's claim in their motion to intervene that "[d]ocuments, including receipts, bank statements, and credits reflecting more than $2.5 million of income expenses and personal monies are

---

[9] The letter, also referenced in the previous section, didn't mention the documents.

located in more than ten banker boxes in the home of Intervenor Hannah in Osage, Oklahoma." Doc. No. 881.

In their motion for reconsideration, CRM Energy and Mr. Hannah present five issues related to the documents. First, they claim to have retained what they consider to be "original documents that they are required by the [Bureau of Indian Affairs] to maintain while they are owners of record." They don't offer the court more information about the character or content of these documents. Assuming CRM Energy and Mr. Hannah indeed must retain these documents until the BIA updates its records, the court orders CRM Energy and Mr. Hannah to produce copies of these documents for the Receiver. Upon review, if the Receiver believes the original documents are the property of the receivership, he may file a motion seeking the originals.

Next, CRM Energy and Mr. Hannah contend the Receiver hasn't requested documents related to their operatorship of the leases. The court disagrees. In the sale order and the show cause order, the court ordered the turn over of documents with "information pertaining to the operatorship" of the leases.

Third, CRM Energy and Mr. Hannah say the company they employ to maintain the production records for the leases won't turn over those records without a subpoena. CRM Energy and Mr. Hannah don't explain why they haven't directed their vendor to comply with the court's order. Regardless, the court's order reaches any third-party "in possession or control of information

pertaining to the operatorship or ownership of the Branson Energy leases." This information belongs to the receivership.

Fourth, CRM Energy and Mr. Hannah again protest that the Receiver has seized all property located on the leases, including property that belongs to third-parties and Mr. Hannah. They don't identify the seized property that allegedly belongs to third-parties in either their response to the motion for sanctions or this motion. In the response to the motion for sanctions, CRM Energy and Mr. Hannah said the Receiver took possession of "backhoes, trucks, trailers, welding equipment, and a host of other materials which were not on the property in 2002 when Hannah purchased it, but which Hannah later purchased." They provided a list of what they claim to be Mr. Hannah's equipment. As the Receiver stated in his motion for sanctions, among the documents CRM Energy and Mr. Hannah are withholding are documents that will identify what property was purchased by Branson Energy with the defrauded investors' funds. The court won't disturb the seizure of the property located on the leases until the Receiver can confirm the property wasn't purchased with those funds. This is all the more reason for CRM Energy and Mr. Hannah to comply with the court's order directing them to turn over all documents in their possession related to the leases.

Finally, CRM Energy and Mr. Hannah again ask for direction as to what exactly is being requested from them. Paragraph twelve of the sale order is sufficiently clear regarding the documents CRM Energy and Mr. Hannah – as

entities and persons in possession or control of information related to the leases – are compelled to produce. Nonetheless, the court offers some further guidance. CRM Energy and Mr. Hannah must produce copies of any document in their possession or control that has information from 2002 to 2014 and is related to the following:

- the production of the leases, including the production records maintained by the third-party vendor;
- the expenses of the leases;
- the financials related to the leases;
- the use of the proceeds of the lease production;
- the employees that worked on the leases;
- the corporate business of the leases; and
- the government regulation of the leases.

As already stated, CRM Energy and Mr. Hannah must also turn over copies of the documents the BIA requires them to maintain and documents related to their operatorship of the leases.

More than ten years ago, the Receiver discovered the leases were purchased in 2002 by Branson Energy with the proceeds of the fraud at the center of this case. Branson Energy's assets, including the leases, became the assets of the receivership.[10] The documents related to the leases from the date

---

[10] On September 17, 2003, the court froze Branson Energy's assets in the "Order Requiring Freeze or Turnover of First Choice Management Services, Inc. Assets and the Proceeds Therefrom."

of purchase forward are the property of the receivership.[11] As such, the Receiver has the right to take possession of them.[12]

## IV. STAY

CRM Energy and Mr. Hannah ask the court to stay its order that they be sanctioned for failure to dismiss the Oklahoma litigation until the show cause order is reviewed on appeal. They claim the Receiver isn't harmed by waiting for the outcome of the Oklahoma litigation because a motion to dismiss is ripe for review and they are simply waiting on a ruling. The Receiver vigorously disagrees with the proposition that the pending Oklahoma litigation doesn't harm the receivership. Execution of the sale order has been stalled by the actions of CRM Energy and Mr. Hannah for almost a year. The lien must be removed and the related foreclosure petition dismissed before the winding down of the receivership may proceed. Further, as discussed previously, the <u>Barton</u> doctrine prohibits the Oklahoma litigation and the continuing business exception doesn't apply to CRM Energy and Mr. Hannah. Accordingly, legal resolution of the Oklahoma litigation will not affect the Receiver or the receivership assets. The court won't stay the accrual of sanctions that will result if CRM Energy and Mr. Hannah don't comply with this order.

---

[11] CRM Energy and Mr. Hannah rightly turned over the documents given to Branson Energy at the time of purchase. The Receiver seeks documents related to the leases from that date forward.

[12] The Receiver filed this court's December 11, 2002 order of appointment in the Northern District of Oklahoma, where the leases are located, on December 16, 2002. Pursuant to 28 U.S.C. § 754, the Receiver then had jurisdiction and control of the receivership's property located in the Northern District of Oklahoma and had the right to take possession thereof.

## V. Sanctions against Counsel

In his response, the Receiver again urges the court to impose sanctions against counsel for CRM Energy and Mr. Hannah for vexatious and unreasonable filings. In the Receiver's reply to the motion for sanctions, he argued the court could impose sanctions against "respondents" pursuant to "numerous bases." The court relied on the Receiver's citation to <u>Johnson v. Commissioner</u>, 289 F.3d 452 (7th Cir. 2002), and declined to impose sanctions against the attorneys representing CRM Energy and Mr. Hannah in Oklahoma state court because <u>Johnson v. Commissioner</u> imposed sanctions pursuant to 26 U.S.C. § 6673(a)(2). Section 6673 applies to tax court proceedings. <u>Id.</u> at 455. The Receiver says this isn't an argument he intended to make. Upon review, the court overlooked the Receiver's argument that sanctions were appropriate pursuant to 28 U.S.C. § 1927, among other reasons.[13] Under § 1927, an attorney who unreasonably and vexatiously multiplies proceedings in a case may be personally liable for the excess costs, expenses, and attorney fees incurred as a result. The attorneys representing CRM Energy and Mr. Hannah in the Oklahoma litigation first came to this court's attention when the Receiver named them in the motion for sanctions. According to the record before the court, the only court filing they have made on behalf of CRM Energy and Mr. Hannah is the lien foreclosure petition, signed by Evan McLemore, in

---

[13] The Receiver also says the court may sanction litigants pursuant to its equitable power to enforce its orders and punish misconduct and its inherent power to punish bad faith.

Oklahoma state court. The court can't find this single action to be unreasonable or vexatious.

As CRM Energy and Mr. Hannah point out, the Receiver asks the court to sanction the "attorneys of Hannah and CRM," and this statement could include attorneys, Kenneth Sullivan, Shannon Dunne, and Andrew Purcell, who have represented CRM Energy and Mr. Hannah in this court. Of their numerous filings on behalf of CRM Energy and Mr. Hannah, *see* Mot. Intervene, Doc. No. 880; Obj. Mot. Leave File Sur-reply, Doc. No. 889; Mot. Recons., Doc. No. 893; Mot. Oral Arg., Doc. No. 895; Obj. Mot. Leave File Sur-reply, Doc. No. 908; Obj. Confirmation Sale, Doc. No. 918; Mot. Hr'g, Doc. No. 919, 920; Emergency Mot. Stay, Doc. No. 923; Mot. Strike, Doc. No. 925; and Mot. Recons. Show Cause Order, Doc. No. 963, each had a distinct purpose. The Receiver offers the court no reason to believe the Chicago attorneys are involved in CRM Energy's and Mr. Hannah's actions in Oklahoma that have defied this court's orders. Although their filings sometimes exaggerate, *see e.g.,* Section II. of this order, at this time, the court finds that counsel is "motivated by over-vigorous advocacy" on behalf of their clients and hasn't intentionally tried to mislead the court. Tokio Marine & Fire Ins. Co., Ltd. v. Chicago & Nw. Transp. Co., 129 F.3d 960, 962 (7th Cir. 1997). The court again declines to sanction the attorneys of CRM Energy and Mr. Hannah.

## VI. Conclusion

For the foregoing reasons, the court DENIES the motion for reconsideration (Doc. No. 963) filed by non-parties CRM Energy and Mr. Hannah.

The court again ORDERS non-parties CRM Energy and John Hannah to: (1) remove the Operator's Oil and Gas Lien Statement filed against the SW Avant Leases in Osage County, Oklahoma, on April 21, 2014 (I-2014-002495); (2) dismiss the "Petition for Lien Foreclosure" filed in the District Court in and for Osage County, State of Oklahoma, on April 30, 2014 (CJ-2014-87); and (3) turn over the documents described in paragraph twelve of the sale order and as described in this order to the Receiver or his representative.

Failure to complete these three actions within fourteen days from the date of this order will result in CRM Energy and Mr. Hannah being held in contempt of court. A finding of contempt will result in a fine of $1,000 for each day of non-compliance with any of the three actions required by this order. The total fine accrued will be capped at the costs, legal fees, and losses the delay imposes on the receivership and will be awarded to the receivership to compensate it for the harm caused by the non-parties' failure to comply with this order. The court will not stay the accrual of sanctions pending appeal.

The court DIRECTS the Clerk to send copies of this order to:

CRM Energy Partners & John Hannah
16540 Ranchland Road
Skiatook, OK 74070

Attorney Kenneth Sullivan
Tressler, LLP
233 S. Wacker Dr., 22nd Floor
Chicago, IL 60606

Attorneys Lee Levinson, Terence Brennan, Trevor Henson & Evan McLemore
Levinson, Smith, and Huffman, P.C.
1743 E. 71st St.
Tulsa, OK 74136

SO ORDERED.

ENTERED:  April 8, 2015

_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court