UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SECURITIES & EXCHANGE COMMISSION, | ) ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:00-CV-446-RLM-CAN |
| | ) | |
| FIRST CHOICE MANAGEMENT SERVICES, INC. AND GARY VAN WAEYENBERGHE, | ) ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

<u>OPINION AND ORDER</u>

The court sanctioned non-parties John W. Hannah and Nona Roach for civil contempt for their refusal to obey court orders to turn over to the Receiver certain documents in their possession or control. The court ruled that Ms. Roach and Mr. Hannah must reimburse the Receiver for the costs he reasonably incurred in the long fight over the documents, and imposed sanctions of $41,305.24 against Ms. Roach and her accounting firm and $114,813.75 against Mr. Hannah and his company. In addition to imposing monetary sanctions, the court ordered Mr. Hannah, Ms. Roach, and their businesses to turn over the documents in question or face further sanctions.

This matter is before the court on four motions to reconsider, one by Mr. Hannah and three by Ms. Roach.

# I. Standard of Review

None of the motions identify a legal basis for reconsideration. Because pro se pleadings are read liberally, the court construes them as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). Under Rule 59(e), a party may move to alter or amend a judgment within 28 days after judgment was entered. Motions for reconsideration under this rule "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." <u>Caisse Nationale de Credit Agricole v. CBI Indus., Inc.</u>, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting <u>Keene Corp. v. Int'l Fidelity Ins. Co.</u>, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)); *see also* <u>Obriecht v. Raemisch</u>, 517 F.3d 489, 494 (7th Cir. 2008) (holding that Rule 59(e) "allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence."); <u>LB Credit Corp. v. Resolution Trust Corp.</u>, 49 F.3d 1263, 1267 (7th Cir. 1995) ("[A] Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence.") (internal quotations omitted).

A manifest error of law or fact under this standard occurs when a district court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." <u>Bank of Waunakee v. Rochester Cheese Sales, Inc.</u>, 906 F.2d 1185, 1191 (7th Cir. 1990). The party asserting such an

error bears a heavy burden, and motions for reconsideration "are not at the disposal of parties who want to 'rehash' old arguments." <u>Zurich Capital Mkts., Inc. v. Coglianese</u>, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005); *see also* <u>Sigsworth v. City of Aurora</u>, 487 F.3d 506, 512 (7th Cir. 2007) (noting that "it is well-settled that a Rule 59(e) motion is not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment.") (internal quotation marks omitted).

## II. DISCUSSION

While both Mr. Hannah's and Ms. Roach's motions present a number of excuses and justifications for their noncompliance with the court's orders, they identify neither newly discovered evidence nor manifest errors of law or fact that would justify disturbing the judgments entered against them.

### A. Mr. Hannah's Motion

Mr. Hannah offers four arguments why the court should reconsider its order sanctioning him. His first argument concerns a 2004 memorandum of understanding, in which he and the receivership tried to negotiate the sale of the oil leases in question. The court's sanction order mentioned this memorandum of understanding, and noted that it required Mr. Hannah to turn over documents related to the leases. He didn't do so, and the deal fell through

– this was the beginning of the long-running document saga. Mr. Hannah argues that the memorandum of understanding was never fully executed by both parties and that it was invalid for other reasons, and objects to the court's characterization of his arguments about the memorandum as "legally frivolous."

This argument is unpersuasive because the memorandum of understanding has nothing to do with why the court sanctioned Mr. Hannah. The sanctions against Mr. Hannah were based not on his violation of the memorandum of understanding, but on his violation of the court's orders beginning in April 2015. In an April 2015 order, the court laid out in detail the types of documents Mr. Hannah had to produce, and threatened to impose a fine of $1,000 per day for each day of noncompliance beyond a particular deadline. The daily sanction was capped at the Receiver's costs, fees, and losses from delay caused by nonproduction of the documents. It was for this period of noncompliance – April 2015 to the time of the hearing – that the court sanctioned Mr. Hannah.

The court mentioned the much earlier memorandum of understanding not as a basis for sanctions, but simply as background to explain the roots of this dispute; the sanction order noted that the document production requirement from the memorandum of understanding "evolved into a series of orders to produce those records," but sanctioned Mr. Hannah only for his noncompliance with those later orders. Mr. Hannah's argument that the

memorandum of understanding was never fully executed is "legally frivolous" not because it is wrong, but because it is irrelevant. The sanction order made clear that Mr. Hannah and his company "were ordered by the court more than a year ago to produce specific records, and haven't done it" and identified the issue as "whether they should be held in contempt and sanctioned for *that* refusal to produce the documents." (emphasis added). The court calculated his fine at the previously threatened rate of $1,000 per day over the 279 days between the deadline set in the April 2015 order and the sanction hearing. If, as Mr. Hannah believes, the sanction order actually depended on the memorandum of understanding, his noncompliance would date to 2004 rather than 2015 – and he would be facing a sanction over ten times greater.

Mr. Hannah's second argument for reconsideration fares no better. At the sanction hearing, the court emphasized that Mr. Hannah's refusal to turn over the documents for so long cost the Receiver dearly, and that this cost would be borne by the defrauded investors on whose behalf the Receiver works. Mr. Hannah objects that the expense is entirely the Receiver's fault; the Receiver could have settled this amicably with him at any time over the past twelve years, could have had the court order him removed as operator of the leases, and could have come to Oklahoma to see the leases and talk the whole matter out. He thinks the Receiver breached its fiduciary duty to the defrauded investors by not acting promptly and decisively to protect receivership assets,

and insists that "this matter is *not* irrelevant and goes directly to the Court's decision to sanction and enter a judgment against" him.

Mr. Hannah is wrong. The Receiver had to trace the investors' funds down many roads while keeping his own expenses minimal, to maximize the defrauded investors' recovery. Whether the Receiver discharged those duties wisely or effectively throughout this case has nothing to do with today's decision, because it has no bearing on the sanctions the court imposed on Mr. Hannah. The court sanctioned Mr. Hannah because he chose to ignore a direct court order. He isn't being punished as a scapegoat for the depletion of the receivership's assets; he is being made to bear the costs of his own contemptuous conduct. Any purported deficiency in the Receiver's representation of the defrauded investors would be between the court, the Receiver, and the fraud victims, and wouldn't give Mr. Hannah the right to ignore validly issued court orders. At the hearing, the court mentioned the cost borne by the victims of fraud not to cast aspersions on Mr. Hannah but rather to explain why the documents are important and why Mr. Hannah should turn them over immediately. Contrary to Mr. Hannah's arguments, it simply doesn't matter how this dispute became the procedural morass it is or who could have most easily avoided the mess. The only questions before the court when considering sanctions were whether Mr. Hannah violated a court order and whether he should be made to bear the costs of his defiance.

Mr. Hannah next offers several brief arguments why the judgment entered against him should be reduced or eliminated, none of which is fully developed and none of which justifies reconsideration. Mr. Hannah argues that the Receiver never came to Oklahoma to pick up the records between 2003 and 2013 despite Mr. Hannah's invitation to do so. This is irrelevant, as Mr. Hannah is being sanctioned only for his refusal to turn over the records after being ordered to in April 2015. He argues that "there was no way" he could have provided all the documents in his possession to the Receiver because the Receiver was located in South Bend, Indiana. This is unpersuasive, because Mr. Hannah eventually turned over the records in question and while they filled several boxes, boxes can be mailed. He insists that he didn't actually disobey the court's orders, because he didn't have corporate documents or production reports in his possession or control and didn't understand why his personal tax returns were relevant. These denials are at odds with the facts established at the sanction hearing, including Mr. Hannah's own testimony that he had corporate records for the years since 2002 in his possession and that he hired Nona Roach to prepare the production reports but never directed her to provide those reports to the Receiver. He argues that the Receiver could have simply gotten the production reports from the Bureau of Indian Affairs, but whether an alternate source for the documents might have been available doesn't excuse Mr. Hannah from complying with a court order to provide the records himself.

Mr. Hannah also argues that the amount of the judgment against him is excessive, because not all the documents requested were truly necessary and because he substantially complied – he reports that he turned over 99% of the requested documents that were in his possession. But the court's orders obligated him to turn over the records no matter whether he thought them actually necessary for transferring leases, and the Receiver presented evidence at the sanction hearing that the documents Mr. Hannah withheld are critically important for allowing the receivership to value the leases and find a buyer. In any case, the court already considered the extent of Mr. Hannah's compliance – and noncompliance – when deciding to sanction him, and he offers no new evidence or argument calling that determination into question.

In addition to generally challenging the full amount of the sanction as unreasonable, Mr. Hannah specifically challenges the $75,000 portion of the fine representing costs to the Receiver from delaying the sale of the leases. He acknowledges that the leases have lost value, but insists that he isn't responsible for the reasons for that decline – the precipitous decline in oil prices, and the leases having been shut down since November 2014. While Mr. Hannah isn't responsible for those root causes, he is directly responsible for their having affected the price at which the receivership could sell. The Receiver had a buyer lined up for the leases in 2014, but the deal fell through, and there was evidence presented at the hearing from which the court was able to conclude that Mr. Hannah's obstructionism was a significant factor in scaring

off the original buyer. The Receiver was able to line up a new buyer, but the value of the leases declined in the interim and the Receiver lost much of the value on the bond it had posted and had to accept a lower sale price. Had Mr. Hannah complied with the court's orders and promptly turned over the documents, the initial sale likely would have gone through and the Receiver could have sold the leases before falling oil prices or long-term nonproduction could erode their value. Accordingly, there is nothing unfair about forcing Mr. Hannah (rather than the defrauded investors) to pay the difference.

Finally, Mr. Hannah makes three more limited requests for modification of the sanction order. He asks that he be allowed to review the Receiver's time records because he thinks the amount of time the Receiver claims to have spent on this dispute is excessive. He offers no reason beyond a bare assertion for thinking that the hours claimed are inflated. The court has closely reviewed the time records in camera, and is satisfied that they are reasonable based on Mr. Hannah's extraordinary resistance to relinquishing his hold on the leases. As the court noted in the sanction order, Mr. Hannah's stubborn recalcitrance has bled the receivership dry and forced the Receiver to expend a colossal amount of time and energy effectuating what should have been a straightforward transfer of ownership – time and energy that could and should have been spent recouping money for victims of fraud.

Mr. Hannah also asks that the court modify the sanction order to excuse the corporation Hannah Energy from having to produce any documents. He

argues that Hannah Energy was never subject to the court's prior document production orders, and is involved in the leases only through having lent money to himself and his company to keep the leases running. At the sanction hearing, Mr. Hannah testified that Hannah Energy is owned by his son and operates oil leases unrelated to those at issue here. He argues that it is unfair to force Hannah Energy to produce documents when it has nothing to do with the leases at issue.

The Receiver believes that Mr. Hannah is using his corporations to hide assets that may belong to the receivership, and insists that inspection of Hannah Energy's documents is necessary to determine whether that company is involved. Mr. Hannah denied owning Hannah Energy but admitted that he personally operates the company's leases, and the Receiver has produced tax documents showing that Mr. Hannah claimed *ownership* profits and losses from Hannah Energy as a sole proprietorship in 2006 and 2009. Testimony at the sanction hearing indicated that Mr. Hannah has played corporate shell games in the past, switching corporate ownership structures and title to assets between corporations he controls for reasons he wasn't able to articulate under questioning. Given the evidence that Mr. Hannah's connection to Hannah Energy is much closer than he would admit at the hearing, the Receiver's concerns are justified. Moreover, the burden on Hannah Energy of producing the documents will be minimal, as most of them are records the company is legally required to maintain.

Lastly, Mr. Hannah asks the court to stay the sanction order until he can seek an appeal. He offers no reason why a stay is necessary, and in any case has already filed a notice of appeal from the sanction order. Accordingly, the court declines to stay enforcement of the judgment.

## B. Ms. Roach's Motions

Ms. Roach didn't appear at the sanction hearing, but mailed the court several letters both before and after the hearing arguing that she shouldn't be sanctioned. After judgment was entered against her, she sent three letters that the court construes as motions to reconsider. Ms. Roach's three motions almost entirely duplicate arguments the court already considered and rejected in the sanction order, so only brief discussion is necessary here.

First, Ms. Roach insists that the documents she refused to produce – the monthly production reports for the Branson leases – are her own work product, and she shouldn't have been required to produce them until she was fully compensated for the work. Ms. Roach's belief that Mr. Hannah or his company owe her money for producing the reports doesn't excuse her from complying with a direct order compelling her to turn the reports over to the receivership. If Ms. Roach wanted to pursue a claim for payment against Mr. Hannah or his company – the entities that hired her to prepare the reports – she was always free to do so. She wasn't free to simply ignore the court's orders, even if she thought them wrong or unfair.

She next argues that the documents she withheld weren't actually necessary to transfer the leases, and that the reports could have been obtained directly from the Bureau of Indian Affairs. As already noted, even if true neither fact is material. The court didn't just order Ms. Roach to turn over unspecified documents that might be needed to transfer the leases; it ordered her to turn over *specific* monthly production reports. Ms. Roach was sanctioned for disobeying a court order, making the Receiver expend time and effort to enforce the order. That Ms. Roach believed the Receiver didn't really need the documents or could have gotten them elsewhere doesn't matter for purposes of deciding whether the sanction was proper.

With regard to the document production portion of the sanction order, Ms. Roach insists that the Receiver is now demanding documents she doesn't have – the underlying source documents she used to prepare the production reports. She suggests that Oklahoma law prevents her from keeping those records after she has prepared and submitted the final report, and objects that she can't produce what she doesn't have. The evidence at the hearing told a different story, but it isn't necessary to resolve that question now. Whether she possesses the underlying source documents may be relevant if the Receiver seeks further sanctions based on her failure to produce them, but doesn't affect the existing judgment against her. Ms. Roach concedes she had the production reports themselves when the court compelled her to produce them,

and concedes she didn't produce them until after the sanction order issued. No more is required to justify the sanction the court imposed.

Finally, Ms. Roach says she wants to more fully contest the sanction against her and requests that the court appoint an attorney to help her do so. She had the opportunity to contest the sanction at the hearing, and chose not to participate either in person or by counsel. Ms. Roach isn't entitled to an attorney at public expense under these circumstances.

III. CONCLUSION

The court DENIES Mr. Hannah's motion for reconsideration and request for a stay (Doc. No. 1020) and DENIES Ms. Roach's three motions for reconsideration (Doc. Nos. 1016, 1017, and 1021).

SO ORDERED.

ENTERED: March 3, 2016

_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court