UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SECURITIES & EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CAUSE NO. 3:00-CV-446-RLM<br>)<br>) |
| FIRST CHOICE MANAGEMENT SERVICES, INC. and GARY VAN WAEYENBERGHE, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

<u>OPINION AND ORDER</u>

We are nearing the end of this action, now in its eighteenth year, in which Joseph Bradley was appointed receiver to try to recover moneys people lost in this fraudulent investment scheme. The receiver's performance has been extraordinary. He has recovered far more of the investors' lost funds than could reasonably have been expected at the action's outset. His pursuit of those funds led him into a thicket of oil leases in Texas. The receiver is now before the court asking that the Railroad Commission of Texas turn over $250,000 that was posted with it in relation to the oil leases. Through its verified application for summary proceedings and civil contempt, disgorgement and other relief [Doc. No. 1097], the receiver asks the court to find the Railroad Commission in contempt for failing to turn over $250,000 in alleged defrauded investor funds that were deposited with Bank of America. Alco Oil & Gas Co. deposited the

funds as a letter of credit to secure an operating license from the Railroad Commission.

The receivership has remained open for the past few years as the receiver addressed the refusal of the parties in possession of the remaining assets – particularly those of Branson Energy Texas, Inc. and Branson Energy, Inc.– to turn over those assets per the procedures set forth in this court's orders. Intense litigation ensued in this court, the court of appeals, and state court, and all of the parties who withheld, encumbered, or interfered with the turnover of the Branson Energy assets were sanctioned and ultimately forced to turn over the assets.

On August 31, 2016, the receiver submitted his "Verified Final Budget and Revised Plan for Closure of the Receivership" [Doc. No. 1093]. The court approved that budget [Doc. No. 1094] and authorized the receiver to make immediate demand of the Railroad Commission for the turnover of the Branson Energy Texas operating bond ($250,000 plus the interest on it over the past decade-plus), and, if compliance wasn't immediate, to pursue such turnover through summary proceedings. The liquidation of the Branson Energy Texas operating bond would enable the receiver to satisfy the estate's monetary obligations, particularly the outstanding attorney fee invoices.

The court gave the Railroad Commission 21 days to respond to the receiver's ensuing motion. The Railroad Commission moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of personal jurisdiction and failure

to state a claim for which a relief can be granted. The motion raised several arguments, many of which the court needn't address.

The Railroad Commission says it has no obligation to release the cash financial assistance; doing so would violate Texas state law. The September 19, 2008 order lifted the freeze order as to Alco, giving Alco permission to operate the leases [Doc. No. 487]. Alco opted to post cash financial assurance with the Railroad Commission for the purpose of operating the leases. The freeze and turnover order provides in relevant part: "Nothing in this order shall impede ALCO's ability to proceed in all matters and/or before all government agencies, boards and/or commissions as the designated, authorized and lawful operator." [Doc. No. 487].

Because the receiver chose to operate the estate property by appointing Alco, *see* S.E.C. v. First Choice Mgmt. Servcs., Inc., 2010 WL 148313, at *2 (N.D. Ind. Jan. 12, 2010), the receiver must operate that property according to state law under 28 U.S.C. § 959(b). The Railroad Commission used this court's position that "[c]ourts have read § 959(b) in context with § 959(a) to mean that receivers can be held liable in tort and must follow state environmental and other regulatory laws." S.E.C. v. First Choice Mgmt. Servcs., Inc., 2010 WL 148313, at *7 (N.D. Ind. Jan. 12, 2010); *accord* In re Cajun Elec. Power Co-op., Inc., 185 F.3d 446, 453-54 (5th Cir. 1999) ("[W]e agree with our sister circuits that the import of this section is that the general bankruptcy policy of fostering the rehabilitation of debtors will not serve to preempt otherwise applicable state laws

dealing with public safety and welfare.") (internal citations omitted). The statute provides in relevant part:

> Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, ***shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated***, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b)(2) (emphasis added).

The Railroad Commission says it will, pursuant to Texas law, refund the cash deposit if: (1) the conditions that caused the proceeds to be collected are corrected; (2) all administrative, civil, and criminal penalties relating to those conditions are paid; and (3) the Commission has been reimbursed for all costs and expenses by Commission incurred in relation to those conditions. TEX. NAT. RES. CODE ANN. § 91.1091 (West 2017).

As of August 2017, Alco still had regulatory responsibility for eighteen wells, and the Railroad Commission says it has spent $542,407.16 directly on plugging and site remediation for the receivership's wells. Once state law is followed regarding Alco's remaining wells and liabilities and the Railroad Commission is reimbursed for its expenses related wells for which Alco has or had regulatory responsibility, the Railroad Commission says it will refund the cash financial assurance to the proper entities.

The Railroad Commission also says the receiver's demand would require payment from public funds. The $250,000 financial assurance is on deposit in Texas' "oil and gas regulation and cleanup fund," which is for the state's use for well plugging and surface remediation, which in turn protect human health, safety, and the environment.

The Railroad Commission further argues that the receiver hasn't set forth a case of contempt, and the matter should be dismissed with prejudice pursuant to 12(b)(6). When the freeze and turnover order [Doc. No. 178] was issued, the $250,000 was in the hands of Bank of America and the Railroad Commission had an independent promise of Bank of America to pay if a demand against the letter of credit should be made. Letters of credit payable to third parties are not receivership estate property, even if they are supported by estate property. *See* In re Green, 210 B.R. 556, 558-59 (Bankr. N.D. Ill. 1997).

Even if the receiver could demand turnover of funds that his agent (Alco) deployed for the estate's benefit, he can't do so in this case, says the Railroad Commission because the estate operated estate assets in Texas and the receiver must, as mentioned previously, operate those assets in accordance with state law. *See* 28 U.S.C. § 959(b). The Railroad Commission can't release the financial assurance as long as Alco remains liable for the operating wells.

Lastly, the Railroad Commission says the 2016 budget order doesn't require any "turnover" from the Railroad Commission. The order simply directs the receiver to make demand for the turnover of Branson Energy of Texas'

5

operating bond. This language, the Railroad Commission says, doesn't give rise to the level of a clear and unambiguous order to support a finding of contempt. Nor does the Railroad Commission believe that any of the other orders the receiver mentioned in his application clearly directs the Commission to turnover the funds at issue.

The receiver says the Railroad Commission's use of 28 U.S.C. § 959(b) is inapplicable. First, the Railroad Commission appointed Alco as operator, not the receiver. The receiver is and was always in "liquidation mode." Alco was responsible for its own activities, and the Railroad Commission forced the receiver to deal with Alco when it denied the receiver standing to remove Alco as operator of the leases. The receiver never "designated" Alco as the operator of the leases; the receiver merely announced that he wasn't adverse to the operator to put the public on notice that the leases can be sold. The statute also is inapplicable, the receiver says, because past orders from the court protect the receiver and the estate from any liabilities associated with Alco. Even if the parties were bound by the statute, the Railroad Commission should have gone before the court to set-off the funds.

The receiver also argues that the bond funds are far removed from the "general revenues of the state" because the receiver notified the Railroad Commission of his rights in the bond funds as soon as they were deposited at the Bank of America. The bond funds became frozen in 2002, when the receiver filed jurisdiction under 28 U.S.C. § 754 in Texas. The Railroad Commission

6

"reasserted" the receiver's claims to the bond and the leases. The receiver's position is that the Railroad Commission hasn't been honest about the exact whereabouts and treatment of the funds.

Lastly, the receiver says that the Railroad Commission can't ignore the freeze and turnover order simply because the bond funds were deposited at Bank of America. The Railroad Commission has never made a claim to the bond throughout the years it has dealt with the receiver and so isn't in a position to do so now.

Civil contempt is "a unique civil sanction because its aim is both coercive and compensatory." Prima Tek II, LLC v. Klerk's Plastic Indus., B.V., 525 F.3d 533, 542 (7th Cir. 2008). To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *See id.*; U.S. S.E.C. v. Hyatt, 621 F.3d 687, 692 (7th Cir. 2010).

A court usually doesn't make contempt findings until it hears from the alleged contemnor. Now that the Railroad Commission has responded, the court agrees with its argument. The remaining legal theories the parties present in their briefings doesn't persuade the court to grant the motion, so the court will decline to address those arguments .

7

Since the beginning of this case, the Railroad Commission has known of the court's oversight of the leases, the receiver's claim to the bond, and the governance of the freeze and turnover order concerning any resolution to issues concerning the leases and bond. But, under the circumstances before the court, the freeze and turnover order doesn't automatically hold the Railroad Commission liable for the remainder of the estate or hold it in contempt.

The Railroad Commission made it clear that the bond funds were in the Texas Oil and Cleanup fund, so the Railroad Commission, a state-run agency, can't simply turn over funds or receivership estate property that is on deposit in a state treasury. The Railroad Commission didn't need to "claim an interest" to the bond funds, since it agreed to refund the estate funds upon being reimbursed for the monies spent on plugging and site remediation for the receivership estate's wells. This also shows that the Railroad Commission is making a diligent effort to work with the receiver in paying off the investors. If the Railroad Commission attempted to refund the receiver at this stage, it would run afoul of Texas state law, *See* TEX. NAT. RES. CODE ANN. § 91.108, § 1091 (West 2017), and the court won't require the Railroad Commission to do that.

Who appointed Alco as operator of the wells is immaterial at this stage of the proceedings, and doesn't affect either party's obligation to maintain the estate's wells in accordance with both federal and Texas state law. *See* 28 U.S.C. § 959(b)(2). Although past orders "protect" the receiver against liabilities associated with Alco, this "liability" is more so a regulatory responsibility that is

8

necessary for the maintenance of the wells. The bond, at least to the extent it supported the Railroad Commission's remediation efforts, was a cost of doing business – a cost imposed by Texas law of operating the wells. The Railroad Commission spent more than half a million dollars in remediation and wasn't obligated under any court order to "set off" bond funds that merely serve as security and would eventually be refunded to the proper entities, especially when Alco's liability exceeded the amount of the cash assurance with the Railroad Commission. Although the court is very appreciative of the receiver's efforts in closing the receivership estate, the relief he seeks falls somewhere between impossible and impracticable. Accordingly, the receiver's motion for summary proceedings and civil contempt, disgorgement and other relief [Doc. No. 1097] must be denied.

After the receiver's response to the Railroad Commission's motion to dismiss, the Railroad Commission filed a 12(f) motion to strike and objection to the receiver's evidence. The Railroad Commission says the receiver's response to its motion to dismiss misstates the procedural posture of this case by indicating that this court issued a show cause order when in fact it hasn't done so. On July 26, 2014, the receiver asked the court to order that the Railroad Commission show cause why it should not be held in contempt. As stated previously, the court doesn't make contempt findings until the alleged contemnor responds. The court gave the Railroad Commission 21 days to respond, and the court treats this as a show cause order. Accordingly, the Railroad Commission's motion to strike is DENIED as it relates to the receiver's responsive pleadings.

9

Next, the Railroad Commission says that the court should also strike J. Michael Katz's affidavit in support of the receiver's summary application, on the grounds that: (1) the affidavit contains inadmissible legal arguments, hearsay, and assumptions of facts outside of the affiant's personal knowledge; (2) the attachments to the affidavit aren't authenticated; and (3) the Railroad Commission hasn't had an opportunity to depose or call the affiant as a witness as required by fundamental fairness.

Federal Rule of Civil Procedure 12(f) provides that "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored, but when striking portions of a pleading "remove[s] unnecessary clutter from the case," the motion may "serve to expedite, not delay." <u>Art of Design, Inc. v. Pontoon Boat</u>, LLC, 2017 WL 5563401, at *1 (N.D. Ind. Nov. 17, 2017) (*citing* <u>Heller Financial, Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1294 (7th Cir. 1989)). "[A] court ordinarily will not strike a matter unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and prejudicial to the objecting party." <u>Art of Design, Inc. v. Pontoon Boat, LLC</u>, 2017 WL 5563401, at *1 (*citing* <u>Fed. Nat'l Mortgage Ass'n v. Cobb</u>, 738 F. Supp. 1220, 1224 (N.D. Ind. 1990)).

The receiver says the Railroad Commission filed the motion as a strategy to avoid the merits of the case and to cause delay. The court disagrees. Mr. Katz's

affidavit isn't necessary for the court to determine whether the Railroad Commission is in contempt. Most importantly, the information in the affidavit is redundant. Although Mr. Katz has personal knowledge of the proceedings, both the court and the parties are aware of the background of the proceedings. The submission of affidavits that contain legal conclusions and redundant information caused more confusion and delay than the Railroad Commission's 12(f) motion. The court will only take into consideration the receiver's exhibits containing the bank statements and letter of credit and the Railroad Commission's exhibits attached in its motion to dismiss.

The court grants the Railroad Commission's motion to strike [Doc. No. 1108] with respect to the affidavit of Mr. Katz and denies it in all other respects. That ruling makes the receiver's motion for corrigendum to correct errata in Mr. Katz's affidavit moot.

For the foregoing reasons, the court DENIES the receiver's motion for summary proceedings and civil contempt, disgorgement and other relief [Doc. No. 1097], GRANTS the Railroad Commission's 12(f) motion to strike [Doc. No. 1108] with respect to the affidavit of Mr. Katz and DENIES it in all other respects, and DENIES AS MOOT the receiver's motions for corrigendum to correct errata in affidavit of Mr. Katz [Doc. No. 1107] and leave to file sur-reply [Doc. No. 1110].

SO ORDERED.

ENTERED: <u>January 24, 2018.</u>

<u>/s/ Robert L. Miller, Jr.</u>
Judge
United States District Court